## RADIATION ONCOLOGY ASSOCIATES, INC.

### v.

## ROGER WILLIAMS HOSPITAL.

### No. 2005–218–Appeal.

Supreme Court of Rhode Island.

June 21, 2006.

Jeffrey S. Michaelson, North Kingstown, for Plaintiff.

Stephen J. MacGillivray, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

Justice SUTTELL, for the Court.

In this contract dispute, Radiation Oncology Associates, Inc. (plaintiff or ROA), appeals from an order of the Superior Court denying its motion to appoint an arbitrator and granting Roger Williams Hospital's (defendant or hospital) motion to enjoin arbitration. Before us is the narrow issue of whether the parties intended to submit a dispute concerning the duration of their "RADIATION ONCOLOGY SERVICES AGREEMENT" (services agreement or agreement) to arbitration. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be decided summarily. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons stated herein, we affirm.

### Facts and Procedural History

On October 1, 2001, the parties entered into an agreement by which ROA would furnish radiation oncology services to the hospital in return for set rates of compensation. The agreement provided for the term of service as follows:

> "The term of the Agreement shall commence October 1, 2001 and shall terminate on December 31, 2004, and notwithstanding anything in the Agreement to

the contrary, shall be subject to termination for the breach of the provisions hereof. If either party shall decide not to renew this Agreement at the expiration of the term hereof, it shall, not later than September 30, 2004, so advise the other party in writing. If an extension or substitute contract is not signed by the parties prior to December 31, 2004, this Agreement shall be null and void and of no further effect."

By September 30, 2004, neither party had sent notice of nonrenewal, and, instead, as December 31 approached, they occupied themselves with ultimately fruitless negotiations pertaining to an extension or replacement agreement.[1]

ROA filed the instant action in Superior Court on December 23, 2004, requesting the appointment of an arbitrator based on G.L. 1956 chapter 3 of title 10, otherwise referred to as the Rhode Island Arbitration Act.[2] On January 26, 2005, the hospital objected to plaintiff's motion to appoint an arbitrator and filed a motion to enjoin arbitration. The plaintiff argued that the failure of either party to send notice of nonrenewal by September 30, 2004, resulted in the automatic renewal of the services agreement on December 31, 2004. The hospital, referring to the plain language of the services agreement, advanced the al-

ternate position that because the parties failed to successfully negotiate an "extension or substitute contract" by December 31, 2004, the services agreement, as well as the obligation to arbitrate, expired on its own terms. The plaintiff responded that, notwithstanding the merits of the parties' respective interpretations of the term-of-service clause, the broad language of the services agreement's arbitration clause, *viz.*, "[s]hould any dispute arise under this Agreement, the parties will promptly endeavor to arrive at a mutually satisfactory solution, all disputes shall be settled by arbitration," called for an arbitrator to resolve their dispute. The hospital, favoring court adjudication, argued that the capture of the arbitration clause did not extend to disputes about the contract's duration because the parties bargained for an express termination provision with a fixed expiration date.

A justice of the Superior Court heard arguments and took the matter under advisement. On February 2, 2005, the motion justice issued a bench decision the thrust of which rejected plaintiff's argument that the broad language of the arbitration clause demanded arbitration to resolve the parties' duration dispute. The motion justice also dismissed defendant's "circular" suggestion to dispose of the ar-

1. A footnote in the hospital's Sup.Ct. R. 12A statement to this Court reports that the parties continued negotiations beyond December 31, 2004, in an attempt to fashion a replacement agreement, for which purpose the parties "entered into a series of standstill agreements pursuant to which the rights and remedies under the [October 1, 2001] Agreement were not disturbed." The plaintiff did not respond to the hospital's footnote in a supplemental memorandum, but confirmed during oral argument the existence of the now obsolete "standstill agreements." Although these circumstances, to which the record is otherwise silent, may be relevant to the impending adjudication of the merits of the parties' duration dispute, they are not material to our discussion today of the arbitrability of that dispute.

2. In addition to its petition to appoint an arbitrator, plaintiff sought, in the alternative, a declaratory judgment that the services agreement automatically renewed on December 31, 2004, because neither party sent notice of nonrenewal by September 30, 2004. Further, plaintiff requested an order enjoining the hospital from interfering with ROA's performance under the services agreement (1) while the duration dispute was in arbitration, or (2) until declaratory judgment entered in plaintiff's favor.

bitration question by simply resolving the substance of the dispute; that is, by deciding that the services agreement, and thus the attendant arbitration clause, was "null and void and of no further effect" after December 31, 2004. Rather, in part relying on *Virginia Carolina Tools, Inc. v. International Tool Supply, Inc.*, 984 F.2d 113, 118 (4th Cir.1993), the motion justice determined that an intent to commit this duration dispute to arbitration could not be inferred from a services agreement that contained a nonspecific arbitration clause accompanied by a provision that the agreement would expire on a date certain. Thus, the motion justice concluded that it was for the court to resolve, in due course, whether the services agreement automatically renewed or expired on December 31, 2004.

An order denying plaintiff's motion to appoint an arbitrator and granting defendant's motion to enjoin arbitration entered on February 17, 2005, and this appeal ensued.[3]

### Discussion

The plaintiff's first allegation of error centers upon the perceived non-application of the principle that, when presented with a contract that contains a broadly worded arbitration clause, the law imposes a "presumption" in favor of arbitration. Second, plaintiff contends that the court ultimately chose to adopt the very "circular" analysis that the motion justice criticized at an earlier point in her decision. Conversely, the hospital maintains that the motion justice properly reserved the duration dispute for judicial resolution (1) because the services agreement did not exhibit an intent to submit this particular dispute to arbitration, and (2) because, in any event, the

agreement's expiration on December 31, 2004, rendered the arbitration clause inoperative.

 A fundamental precept in contests over arbitration and adjudication is that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *School Committee of North Kingstown v. Crouch*, 808 A.2d 1074, 1078 (R.I.2002) (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Determining whether the parties agreed to submit a particular dispute to arbitration turns upon the parties' intent when they entered into the contract from which the dispute ultimately arose. *See Stanley–Bostitch, Inc. v. Regenerative Environmental Equipment Co.*, 697 A.2d 323, 326 (R.I.1997). General rules of contract construction apply. *See, e.g., Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 784 (R.I.1982). Our standard of review is well settled: "The issue of whether a dispute is arbitrable is a question of law that this Court reviews *de novo.*" *State, Department of Corrections v. Rhode Island Brotherhood of Correctional Officers*, 866 A.2d 1241, 1247 (R.I.2005). We proceed, therefore, in search of the parties' intentions manifested in the applicable provisions of the services agreement.

 Our review of the services agreement leads us to conclude that the parties did not intend to submit to arbitration disputes over the duration of their services agreement because the terms of their agreement included a date certain for expiration. The final sentence to paragraph 22(a) of the services agreement reads: "If

---

**3.** Although the order indicates a filing date of February 3, 2005, it was not entered until the motion justice signed the order on February 17, 2005. *See Kay v. Menard*, 727 A.2d 665, 666 n. 2 (R.I.1999). The plaintiff filed a notice of appeal on February 17, 2005.

an extension or substitute contract is not signed by the parties prior to December 31, 2004, this Agreement shall be null and void and of no further effect." As a matter of contract construction, the strong and specific language of this expiration provision limited the reach of the noticeably nonspecific language of the arbitration clause that "all disputes" arising under the agreement "shall be settled by arbitration." *See Crouch,* 808 A.2d at 1079 (interpreting the broad language of arbitration provisions in a collective bargaining agreement to be superseded by the more explicit provisions of a statute incorporated into the agreement); *accord Antonio Marcaccio, Inc. v. Santurri,* 51 R.I. 440, 442, 155 A. 571, 572 (1931) (applying the rule that more specific contract provisions govern more general ones in a dispute over a broker's commission); *cf.* 11 Samuel Williston, *A Treatise on the Law of Contracts* § 32:15 at 509–10 (Richard A. Lord ed., West Group 4th ed. 1999) (indicating that, when interpreting a contract that contains contradictory clauses, courts will typically give preference to the more specific of the two clauses).

It is true that this Court has voiced a preference in favor of arbitration as a particularly efficacious alternative method of dispute resolution. *See, e.g., Crouch,* 808 A.2d at 1078; *Brown v. Amaral,* 460 A.2d 7, 10 (R.I.1983); *School Committee of Pawtucket v. Pawtucket Teachers Alliance,* 120 R.I. 810, 815, 390 A.2d 386, 389 (1978). But we do not see our holding today as an affront to that principle, particularly in cases, such as that under review, involving a challenge to the duration of a contract the terms of which include an express expiration date. We observe that federal circuit courts similarly have discounted the import of any "presumption" in favor of arbitration when called upon to determine the arbitrability of duration disputes concerning contracts containing a date certain for expiration. *See Virginia Carolina Tools, Inc.,* 984 F.2d at 118 (holding that an intent to arbitrate a duration dispute could not be inferred from an agreement that contained a nonspecific arbitration clause and an express termination date provision); *National Railroad Passenger Corp. v. Boston and Maine Corp.,* 850 F.2d 756, 763–64 (D.C.Cir.1988) (holding that a party could overcome a broad arbitration clause by showing an unambiguous expiration date); *cf. Municipality of San Juan v. Corporacion Para el Fomento Economico de la Ciudad Capital,* 415 F.3d 145, 150 & n. 8 (1st Cir.2005) (distinguishing *Virginia Carolina Tools, Inc.* because, in that case, the contract at issue contained a more specific termination date).

■ Because we hold that an intent to submit this particular dispute to arbitration cannot be inferred from the plain language of the services agreement, we need not address the hospital's alternate position that the arbitration clause became unenforceable by operation of the contract's expiration on December 31, 2004. We do wish to emphasize, however, the failing of this latter approach as a means of resolving contests between arbitration and adjudication. The United States Supreme Court has indicated that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies, Inc.,* 475 U.S. at 649, 106 S.Ct. 1415; *see also Virginia Carolina Tools, Inc.,* 984 F.2d at 118. This Court has acknowledged the propriety of this admonition on numerous occasions. *E.g. Rhode Island Court Reporters Alliance v.*

*State,* 591 A.2d 376, 378 (R.I.1991); *School Committee of Pawtucket,* 120 R.I. at 815, 390 A.2d at 389. Accordingly, notwithstanding our language construing provisions of the services agreement for the sole purpose of resolving the question of arbitrability, the merits of the parties' duration dispute are still subject to adjudication on remand.

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court, to which we remand the record in this case.

Justice ROBINSON did not participate.