DECISION
This case is before the Court on the parties' cross-motions for summary judgment. This controversy arises from Plaintiff Superintendent of North Providence School's revision of written job descriptions, including minimum requirements for certain non-teaching positions, without the consent of Defendant Rhode Island Laborers' District Council, Public Employees Local Union 1033 ("the Union"). Plaintiffs seek a declaration that formulating these written job descriptions is a non-delegable statutory responsibility and, accordingly, that the Union's grievance relating to revisions to these job descriptions is not arbitrable. In addition, Plaintiffs seek an injunction enjoining arbitration of this grievance from proceeding. For the reasons set forth below, the Court grants Defendant's motion for summary judgment and denies Plaintiffs' motion for summary judgment. Accordingly, Plaintiffs' requests for injunctive and declaratory relief are denied.
 FACTS AND TRAVEL
The following findings of fact are based upon the parties' Stipulation of Facts and Exhibits, the parties' memoranda, and the arbitrator's decision of February 8, 2010. The Union *Page 2 
is the exclusive bargaining representative of various non-teaching employees of the North Providence, Rhode Island School Department. Defendant and Plaintiff North Providence School Committee ("the School Committee") are parties to a collective bargaining agreement ("CBA") valid from July 1, 2007 until June 30, 2010. The CBA states, in relevant part:
 ARTICLE VIII FILLING OF VACANCIES . . .
 Section 3. (A). . . . . .
 (B) The vacancy shall be filled on the basis of qualifications and ability, as agreed by the parties. Where qualifications and ability are relatively equal, seniority shall be the determining factor. Should a question arise of the decision made by the EMPLOYER in the question of ability, this shall constitute a grievance and be submitted to the Grievance and Arbitration Procedure included in this Agreement.
 . . .
 ARTICLE XX GRIEVANCE AND ARBITRATION Section 1. Grievances. It is mutually understood and agreed that all grievances of Employees shall be dealt with as follows:
 . . .
 Section 3. If a grievance is not settled, such grievance shall at the request of the UNION, be referred to the American Arbitration Association in accordance with its rules then in existence.
 The Arbitrator shall hold a hearing within ten (10) days of his appointment, and the decision shall be final and binding upon the parties. . . .
 (CBA, submitted as Joint Ex. 1.)
The instant dispute arose when Plaintiff Donna Ottaviano, the Superintendent of North Providence Schools ("the Superintendent"), revised the written job descriptions for various *Page 3 
positions held by bargaining unit members without the Union's consent to the changes. All of these positions are secretarial or clerical.[1]
The Union filed a grievance in response to the Superintendent's actions. The grievance was denied. Subsequently, the Union demanded arbitration from the American Arbitration Association. Plaintiffs filed their complaint and a motion to stay arbitration on January 5, 2010. Following a hearing on the motion to stay, this Court denied Plaintiffs' motion. The matter proceeded to arbitration as scheduled on January 22, 2010. At the arbitration hearing, the School Committee initially challenged the arbitrator's authority to resolve the grievance on the grounds that the dispute is not arbitrable. The parties then agreed that the arbitrator would decide the matter of arbitrability before considering the merits of the grievance.
On February 1, 2010, this Court entered the parties' consent order which, among other things, consolidates Plaintiffs' request for a preliminary injunction with their request for a declaratory judgment. The parties filed cross-motions for summary judgment. On February 8, 2010, the arbitrator determined that the dispute was arbitrable and issued a written decision to that effect.
 ANALYSIS I Standard of Review
Both parties have moved for summary judgment. On a summary judgment motion, this Court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Fiorenzano v. Lima, 982 A.2d 585, 589 (R.I. 2009). "Summary judgment *Page 4 
will be granted if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."Id. (internal quotations omitted).
The matters before the Court are Plaintiffs' consolidated requests for declaratory judgment and an injunction to enjoin arbitration of Defendant's grievance. At the March 8, 2010 hearing on Plaintiffs' request for an injunction, discussion turned to the issue of whether the Court ought to treat Plaintiffs' request for an injunction as a petition to vacate an arbitration award. Both parties submitted memoranda on this issue. Plaintiffs assert that the usual standard for injunctions should apply while Defendant advocates the highly-deferential arbitration award vacation standard based on G.L. 1956 § 28-9-18.
Because the Court would reach the same ultimate result — allowing the arbitration to go forward as scheduled — under either of the two standards proffered by the parties, it will apply the standard for a preliminary injunction to the dispute for the sake of simplicity. In so choosing, the Court notes that courts frequently make determinations regarding the substantive arbitrability of disputes and that its application of the standard for granting a preliminary injunction will not require it to examine or comment upon the merits of the underlying grievance improperly. See Radiation Oncology Associates,Inc. v. Roger Williams Hospital, 899 A.2d 511, 515 (R.I. 2006) (observing that it is improper for courts to address the merits of the underlying dispute when assessing whether the dispute is arbitrable); School Committee of the Town of North Kingstown v.Crouch, 808 A.2d 1074, 1078 (R.I. 2002) (holding that "[w]hether a particular collective bargaining agreement contains clear language creating a duty to arbitrate a particular dispute is a matter for judicial determination"). Thus, the Court will not invade the exclusive territory of the arbitrator in applying the usual standard for injunctive relief. See Rhode Island Court ReportersAlliance v. State of Rhode Island, 591 A.2d 376, 378 (R.I. 1991) (noting that courts' "hands-off" *Page 5 
approach to arbitrable disputes stems from arbitrators' unique ability to satisfactorily resolve such disputes). "The primary factors a trial justice must consider in granting a preliminary injunction are a showing of irreparable harm to plaintiff, plaintiff's substantial likelihood of success on the merits, balancing the parties['] interests, and preserving the status quo."King v. Grand Chapter of Rhode Island Order of Eastern Star,919 A.2d 991, 995 (R.I. 2007) (internal quotations omitted) (alteration in original).
Pursuant to G.L. 1956 § 9-30-1, Rhode Island's enactment of the Uniform Declaratory Judgment Act, the Superior Court has the "power to declare rights, status, and other legal relations" upon petition. Section 9-30-1. The Court has considerable discretion as to whether to grant or deny a request for declaratory judgment.Town of Barrington v. Williams, 972 A.2d 603, 608 (R.I. 2009). While the Court has the authority to issue declaratory judgments, it has no duty to do so. Cruz v. Wausau Insurance,866 A.2d 1237, 1240 (R.I. 2005).
 II Arbitrability
Whether the Court may grant an injunction or exercise its discretion to grant a declaratory judgment depends, in part, on whether the Union's grievance over the formulation of job descriptions, including minimum qualifications, is arbitrable.See § 9-30-1 et seq.; King, 919 A.2d at 995. "A fundamental precept in contests over arbitration and adjudication is that `[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" Radiation Oncology Associates,899 A.2d at 514 (quoting Crouch,808 A.2d at 1078 (other quotations omitted)) (alterations in original). Determining whether parties agreed to submit a particular matter to arbitration requires an *Page 6 
examination of the contract between them. See RadiationOncology Associates, 899 A.2d at 514. Courts resolve all doubts about the arbitrability of a dispute in favor of arbitration.ATT Technologies, Inc. v. Communications Workers ofAmerica, 475 U.S. 643, 650 (1986) (citing Steelworkers v.Warrior Gulf Navigation Co., 363 U.S. 574, 582-83 (1960));Crouch, 808 A.2d at 1078; Rhode Island Court ReportersAlliance, 591 A.2d at 377. In resolving the issue of arbitrability, the Court "`[has] no business weighing the merits'" of the underlying dispute. Rhode Island Court ReportersAlliance, 591 A.2d at 378 (quoting United Steelworkers ofAmerica v. American Manufacturing Co., 363 U.S. 564, 568 (1960)).
The CBA between the parties includes an agreement to arbitrate unresolved grievances.[2] Article XX of the CBA, entitled "GRIEVANCE AND ARBITRATION", outlines the process for pressing a grievance, including the Union's right to demand arbitration if the School Committee denies the grievance. (CBA Art. XX.) The CBA does not provide a definition for the term "grievance" that might serve to exclude disputes over the formulation of written job descriptions from the universe of arbitrable grievances, nor do the parties specifically exclude this kind of dispute in any other fashion.[3]
Thus, the parties' intention, as manifested by the plain language of their CBA, was to arbitrate disputes over the drafting of written job descriptions, including the *Page 7 
formulation of minimum job requirements. See WoonsocketTeachers' Guild v. School Committee,117 R.I. 373, 376, 367 A.2d 203, 205 (1976) (stating that "[i]n interpreting a written contract, the intention of the parties must govern if that intention can be clearly inferred from its terms . . .")
Plaintiffs argue that even if the CBA indeed does provide for arbitrating grievances over job descriptions, decisions regarding setting minimum requirements and job duties for non-teaching positions is a legally non-delegable statutory duty and is, therefore, non-arbitrable. Our State Supreme Court has stated that duties that are imposed upon school committees by statute (as well as "activities closely associated therewith") may not be bargained away. North ProvidenceSchool Committee v. North Providence Federation of Teachers, Local920, 945 A.2d 339, n. 12 (R.I. 2008); Woonsocket Teachers'Guild, Local 951 v. Woonsocket School Committee,770 A.2d 834, 838 (R.I. 2001). However, this rule must be reconciled and harmonized with statutes that obligate school committees, in their role as employers, to bargain with unions over "hours, salary, working conditions and other terms of employment." G.L. 1956 §§ 28-9.4-1,-3; see North ProvidenceSchool Committee, 945 A.2d at 347 (observing that "the sweeping language of Title 16 must be read in harmony with the provisions of" the Certified School Teachers' Arbitration Act, G.L. 1956 § 28-9.3-1 et seq.). The execution of a CBA is the logical and expected outcome of such mandatory bargaining.See § 28-9.4-5 (mandating that municipal employers must bargain and, once the parties reach an agreement, "cause any agreement resulting from negotiation or bargaining to be reduced to a written contract").
Our State Supreme Court examined the tension between the dictates of Title 16 and the statutory obligation to bargain inNorth Providence School Committee v. North Providence Federationof Teachers, Local 920, 945 A.2d 339 (R.I. 2008).North Providence School *Page 8 Committee revolved around a management decision to eliminate English teachers' preparation and tutoring periods for budgetary reasons. 945 A.2d at 341. The arbitrator in North ProvidenceSchool Committee had ruled on the grievance, including a decision that the dispute was arbitrable. Id. at 342. In affirming the Superior Court's decision to confirm the challenged arbitration award, the Court stated:
 "In enacting Title 16, the General Assembly delegated to the school committees of the several cities and towns expansive powers over education; it spoke in extraordinarily broad terms when it vested authority over the public schools in the state's several school committees. It is true that the sweeping language of Title 16 must be read in harmony with the provisions of the [Certified School Teachers' Arbitration Act]; it is nonetheless a basic rule of law that school committees are not at liberty to bargain away their powers and responsibilities with respect to the essence of the educational mission. In our view, in this case we are figuratively standing on the banks of the Rubicon: a very strong argument can be made that a decision about having or not having a composition period for teachers of English is directly related to the essence of the education mission and therefore non-arbitrable." North Providence School Committee, 945 A.2d at 347 (footnote omitted).
The North Providence School Committee Court went on to postulate that had the School Committee offered up a reason more closely tied to the "purpose of improving the education of . . .students" than to budgetary concerns, the matter may well have been non-arbitrable.[4] Id. at 347. Thus, from theNorth Providence School Committee decision, this Court gleans a rule that while school committees may bargain away many things, they may not bargain away statutorily-imposed responsibilities that are closely related to the "essence of the educational mission." Id. at 347.[5] *Page 9 
The remaining question, then, is whether the task of formulating job descriptions and minimum requirements for non-teaching staff is so closely related to the "essence of the educational mission" so as to be non-delegable and non-arbitrable. The North ProvidenceSchool Committee Court characterized the issue of whether eliminating teacher preparation and tutoring periods was non-delegable as a close case. 945 A.2d at 347. The issue in the instant case is not nearly so close. Here, deciding what specific experience, training, and personality traits a job candidate for a secretarial or clerical position must possess has only a tenuous relationship to the educational mission. While the employees in question aid in the efficient operation of the school system and have constructive relationships with students, parents, and fellow staff, these employees have little to do with educating North Providence's youth.
The outcome of this case does not change even when the Court applies the definition of "relate[d] to `the essence of the educational mission'" from Central Falls School District Board ofTrustees v. Central Falls Teachers Union, C.A. No. PC-2007-4684, Slip op. at n. 18 (R.I. Super. Aug. 7, 2008), a case brought to the Court's attention by Plaintiffs. CentralFalls School District, a Superior Court case about whether the Board of Trustees' decision to promote a teacher to the position of High School English Department Chair was a non-delegable statutory duty, suggests that duties that "ensur[e] that the schools are managed properly and employ those teachers and administrators necessary to ensure the best education for the students" is closely *Page 10 
related to the essence of the educational mission. Central FallsSchool District, C.A. No. PC-2007-4684, Slip op. at 36-37. This is a sensible definition which should be read in the context of its facts. The "administrators necessary to ensure the best education" referred to in the Central Falls School District case were administrators responsible for developing curricula, monitoring student progress, and training and supervising teachers.Id. at n. 11. In contrast, the job functions at issue in this case are clerical and secretarial. They have nothing to do with teaching or learning. The secretaries and clerks affected by the instant controversy are not the sort of administrators envisioned by the Central Falls School District case.
Thus, because the duty in question is not related to the "essence of the educational mission," it is not non-delegable and was capable of being bargained away by the School Committee.[6] The Union's grievance is arbitrable. For this reason, the Court grants the Union's motion for summary judgment and declines to issue a declaratory judgment in favor of the Plaintiffs. Similarly, Plaintiffs are ineligible for an injunction because they have not succeeded on the merits of their case. See King,919 A.2d at 995. In granting Defendant's motion, the Court observes that Plaintiffs have not shown that they would suffer irreparable harm without the requested relief.[7] See id. In addition, Plaintiffs have an adequate remedy at law. SeeIn re State Employees' Unions, 587 A.2d 919, 926 (R.I. 1991) (adopting Superior Court's holding that an available arbitral forum is an adequate remedy at law such as to obviate the need for an injunction). For many months prior to the filing of the instant action, the status quo in this case was the expectation that an arbitrator would resolve the grievance. Therefore, declining to grant *Page 11 
injunctive relief to the Plaintiffs preserves the status quo.See King, 919 A.2d at 995. Lastly, the weight of the equities is evenly balanced. See id.
 CONCLUSION
Viewing the evidence and drawing all reasonable inferences in the light most favorable to Plaintiffs, the Court holds that the Union's grievance is arbitrable. Therefore, Defendant's motion for summary judgment is granted. Accordingly, Plaintiffs' motion for summary judgment is denied.
[1] The job descriptions in question are for positions including Human Resources Secretary, Variable Clerk/Elementary Nurse's Clerk, Special Education Coordinator Clerk, Secretary to the Assistant Superintendent, Variable Clerk/North Providence High School Nurse's Clerk, Variable Clerk/North Providence High School Guidance Department, and Elementary School Textbook Loan Secretary.
[2] Not only did the parties agree to a CBA which included an arbitration clause, but the parties then agreed to submit this question of arbitrability to the arbitrator. It was when the arbitrator decided against the School Committee that the committee attempted to reneg.
[3] Plaintiffs argue that the sentence "Should a question arise of the decision made by the EMPLOYER in the question of ability, this shall constitute a grievance . . ." in Article VIII, Section 3(B) of the CBA implicitly excludes disputes over formulating job descriptions from the agreement to arbitrate because it references ability, but does not mention qualifications. However, this sentence is preceded by a sentence about assessing the qualifications and abilities of specific job applicants: "Where qualifications and ability are relatively equal, seniority shall be the determining factor." (CBA, Article VIII, Section 3(B)) It is in this context that the sentence about questions of ability constituting a grievance must be read. See Woonsocket Teachers' Guild v.School Committee,117 R.I. 373, 376, 367 A.2d 203, 205 (1976) (holding that ascertaining the intent of parties to a contract requires reading the entire contract, not a detached portion thereof). Read together, these sentences in the CBA indicate that the Union may file a grievance when it disagrees with the School Committee's assessment of a specific job candidate's abilities. The CBA does not evince an intent to exclude disputes over drafting job descriptions, including minimum qualifications, from arbitration.
[4] While the North Providence School Committee indicates that a school committee's reasons for taking an action may be relevant to whether the action implicates the "essence of the educational mission", nothing about the Rhode Island Supreme Court's decision indicates that motivations are dispositive. 945 A.2d at 347.
[5] Multiple statutory sections relate to the School Committee's authority to draft job descriptions, including minimum requirements, for non-teaching positions. On the broad end of the scale lies G.L. 1956 § 16-2-9(a), which vests "[t]he entire care, control, and management of all public school interests" in the School Committee. The specific end of the spectrum includes § 16-2-9(a)(6) (granting school committees "overall policy responsibility for the employment and discipline of school department personnel"), § 16-2-9(a)(13) (allowing the Superintendent to appoint all school department personnel with the consent of the School Committee), and § 16-2-9(a)(14) (imposing a duty to establish minimum standards for personnel and personnel policies upon the School Committee).See § 16-2-18 (reiterating that the Superintendent has the authority to select and appoint personnel with the consent of the School Committee). In addition, the statute mandates that the Superintendent appoint all personnel and "administer the personnel function of the school department consistent with personnel standards" and policies. Sections 16-2-11(a)(7)-(8). Reading these statutes broadly, it is clear that the General Assembly intended for the School Committee and the Superintendent to decide what qualifications non-teaching school department personnel must have in order to qualify for their positions.
[6] The Court does not decide what, if anything, the parties agreed to with regards to determining minimum qualifications for non-teaching positions. This question is for the arbitrator. The question before the Court is merely the question of arbitrability.
[7] In their memorandum, Plaintiffs explain that their "irreparable harm" would be arbitrating a matter "which is clearly not arbitrable." (Pl.'s Mem. in Support of Mot. for Inj. Relief 5-6.) In light of the Court's holding that the matter is arbitrable, Plaintiffs clearly will not suffer the harm that they fear.