DECISION
This case is before the Court on the Cumberland School Committee's petition for injunctive relief and request for a declaratory judgment. The Committee seeks an order enjoining the Cumberland Teachers' Association from arbitrating a termination grievance. For the reasons set forth below, the Court declines the Committee's petition.
 I Facts and Travel
On February 26, 2009, the Cumberland School Committee approved a recommendation that Kimberly Otero's employment should not be renewed for the 2009-2010 school year. During this time, the Committee was reviewing approximately 100 such recommendations. Ms. Otero — a tenured teacher in the Cumberland School System — was informed that the recommendation was based on her evaluation, her job performance, and fiscal exigency. Shortly thereafter, on March 5, 2009, the Cumberland Teachers' Association, on behalf of Ms. Otero, requested a hearing before the full Committee pursuant to G.L. 1956 § 16-13-4.
The Committee attempted to schedule a hearing, but was prevented from doing so due to the repeated absence of one of its members. Our Supreme Court has "held that § 16-13-4, which *Page 2 
allows teachers to request a dismissal hearing before the `full board' of the school committee, requires the attendance of all committee members at such hearings." Davis v. Rhode Island Boardof Regents for Education.,121 R.I. 473, 478, 399 A.2d 1247, 1250 (R.I. 1979). "[T]he failure of all school committee members to attend each hearing session [would] render[] the resulting decision illegal because the board [would be] improperly constituted." Id. Thus, because one elected member of the Cumberland School Committee repeatedly failed to commit herself to attending Ms. Otero's appeal hearing, the hearing could not be held.
Finally, in October of 2009, due to the lengthy delay in scheduling a hearing, the Cumberland Teachers' Association ("Union") proposed that the parties refer Ms. Otero's grievance directly to arbitration. The Union attests that Joseph Rotella, Esq, the Director of Administration for the Cumberland School Department, orally indicated that the Committee agreed to submit Ms. Otero's case to arbitration. See Santiello Aff. ¶ 12. Notably, Mr. Rotella himself indicated that he:
 "informally approached Mr. Donald Costa, the head of the Cumberland School Committee to discuss the possibility. Mr. Costa did not object to the union's proposal. Shortly thereafter I orally informed Mr. Santaniello that I would agree to refer the appeal . . . to arbitration." (Rotella Aff. ¶¶ 15-16.)
The Committee never voted to determine whether the matter should be arbitrated. See id. at ¶ 23.
Nevertheless, the Union referred the matter to arbitration on November 20, 2009. An arbitrator was selected, and February 26, 2010 was set as the date for the first hearing. On that date, the Union asked the arbitrator to bifurcate the hearing to determine whether or not the Committee could introduce documents detailing Ms. Otero's work performance. Its position was that such documents could not be introduced because the Committee did not have the same evidence before it when it upheld the recommendation to terminate Ms. Otero's employment. *Page 3 
The arbitrator agreed to bifurcate the hearing and gave the parties additional time to brief the issue. However, before the next hearing date, the Committee asserted that the arbitrator had no jurisdiction over the matter and offered to hold a hearing before the Committee instead.[1] After the Union refused this offer, the Committee filed the present action. It now asks this Court to enjoin Ms. Otero's arbitration and to declare that Ms. Otero's grievance is not arbitrable.
 II Standard of Review
1. Declaratory Judgment
Pursuant to G.L. 1956 § 9-30-1, Rhode Island's enactment of the Uniform Declaratory Judgment Act, the Superior Court has the "power to declare rights, status, and other legal relations" upon petition. While the Court has the authority to issue declaratory judgments, it has no duty to do so. Cruz v. Wausau Insurance.,866 A.2d 1237, 1240 (R.I. 2005).
2. Preliminary Injunction
"The primary factors a trial justice must consider in granting a preliminary injunction are a showing of irreparable harm to plaintiff, plaintiff's substantial likelihood of success on the merits, balancing the parties' interests, and preserving the status quo." King v. Grand Chapter of Rhode Island Order of EasternStar, 919 A.2d 991, 995 (R.I. 2007) (quoting Paolissi v.Fleming, 602 A.2d 551, 551 (R.I. 1992). Thus,
 "in deciding whether to issue a preliminary injunction, the hearing justice should determine whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown *Page 4 
that the issuance of a preliminary injunction will preserve the status quo." DiDonato v. Kennedy, 822 A.2d 179, 181 (R.I. 2003) (quoting Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999)).
 III Analysis
I. Arbitrability
Whether the Court may grant an injunction or exercise its discretion to grant a declaratory judgment depends on whether Otero's termination grievance is arbitrable. "A fundamental precept in contests over arbitration and adjudication is that `[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'"Radiation Oncology Associates v. Roger Williams Hospital,899 A.2d 511, 514 (R.I. 2006) (quoting Crouch,808 A.2d at 1078 (other quotations omitted)) (alterations in original). Determining whether parties agreed to submit a particular matter to arbitration requires an examination of the contract between them. See Radiation OncologyAssociates, 899 A.2d at 514. Courts resolve all doubts about the arbitrability of a dispute in favor of arbitration. SeeATT Technologies, Inc. v. Communications Workers ofAmerica, 475 U.S. 643, 650 (1986) (citing Steelworkers v.Warrior Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).
In Crouch, a tenured public school principal was dismissed for cause. Pursuant to § 16-13-4(a) — which in part provides that a "teacher may, within fifteen (15) days of the notification [of dismissal], request in writing a hearing before the full board" — the school committee held a series of hearings to consider Mr. Crouch's dismissal. See Crouch 808 A.2d at 1076. Mr. Crouch then "appealed the decision of the school committee to the commissioner of education pursuant to § 16-13-4(a)."Id. Simultaneously, Mr. Crouch filed a grievance under the Collective *Page 5 
Bargaining Agreement[2] and asked the Commissioner of Education to hold his appeal in abeyance pending the arbitration of that grievance. See id. Much like the present case, the school committee filed a complaint for declaratory and injunctive relief and sought to bar Mr. Crouch from proceeding to arbitration. Our High Court addressed the "critical question[]" of whether the parties entered into an agreement to arbitrate disputes arising out of a tenured teacher's termination. See id. at 1077.
A statutory remedy, set forth in § 16-13-4, lays out the process through which an aggrieved teacher may appeal a termination decision. After receiving a statement of cause for dismissal, the teacher may request a hearing before the full board. If the teacher feels aggrieved by a decision of the full board, he or she may appeal to the Department of Elementary and Secondary Education. From there, the teacher may appeal directly to the Superior Court. Despite this statutory remedy, "[n]othing contained in this section shall be construed to prohibit . . . a school committee from agreeing, in a collective bargaining agreement, to the arbitration of disputes arising out of the nonrenewal, dismissal, and/or suspension of a teacher. . . ." Section 16-13-4(b).
The Crouch court noted that the "CBA did not clearly state that the parties agreed to arbitrate terminations or dismissals of tenured teachers for cause. In fact, there was no express reference anywhere in the CBA to the termination of teachers for cause."Crouch, 808 A.2d at 1078. The CBA's grievance procedure clause defined grievance as "a complaint by a teacher that . . . he/she alleges that there has been a violation, misinterpretation or misapplication of the provisions of this Agreement." Id. The court noted that the "CBA's arbitration provisions should *Page 6 
clearly cover the particular type of dispute specified in [§ 16-13-4(b)[3]] as optionally arbitrable, instead of just referring to the arbitrability of other or more generalized disputes between the parties that do not explicitly cover for-causeterminations." Id. at 1079. (emphasis added). Without an "express reference anywhere in the CBA to the termination of teachers for cause," the CBA in Crouch did not specify that termination grievances were arbitrable. Id. at 1078. Thus, the plaintiff was required to follow the statutory remedy contained in § 16-13-4.
Unlike the factual scenario in Crouch, the CBA at issue heredoes contain an express reference to termination for cause. Article 5, Section D indicates that "employment may be terminated by the Committee for cause as provided by state statute and decisional law." Similarly, Section G of the same Article states that "[n]o teacher will be disciplined, including . . . discharge . . . without just cause." Our High Court has stated that, "although there is a presumption favoring arbitration, some provision within the agreement [such as] a specific provision detailing the matter . . . should exist to permit submission of the matter to arbitration."Id. at 1079 (quoting Rhode Island Court ReportersAlliance v. State, 591 A.2d 376, 378 (R.I. 1991).
In both Crouch and Rhode Island Court ReportersAlliance, the court was unable to find "some provision within the agreement [such as] a specific provision detailing the matter . . . to permit submission of the matter to arbitration." Crouch808 A.2d at 1079 (quoting Rhode Island Court ReportersAlliance, 591 A.2d at 378 (R.I. 1991). Here on the other hand, there is both a definition of grievance that encompasses an alleged violation of any of the CBA's sections, and an express CBA provision addressing for-cause terminations. This, coupled with the *Page 7 
presumption in favor of arbitration, makes the present grievance arbitrable. See ATT Technologies, Inc.,475 U.S. at 650 (Courts resolve all doubts about the arbitrability of a dispute in favor of arbitration). Notably, such a procedure is consistent with § 16-13-4(b)'s mandate that "a school committee [may] agree[], in a collective bargaining agreement, to the arbitration of disputes arising out of the nonrenewal, dismissal, and/or suspension of a teacher. . . ."
II. Authority
The Committee correctly notes that "the authority of a public agent to bind a municipality must be actual." CasaDiMario, Inc. v. Richardson, 763 A.2d 607, 610 (R.I. 2000) (internal quotation omitted). "Consequently, any representations made by such an agent lacking actual authority are not binding on the municipality. Moreover, the general rule throughout this country is that, absent actual authority to do so, a municipal attorney may not compromise claims or consent to judgments against the municipality." Id. (internal quotations omitted). Our High Court has recognized that "the relationship between an attorney and client is essentially one of principal and agent." McBurney v.Roszkowski, 875 A.2d 428, 437 (R.I. 2005). "For that reason, the determination of whether an attorney possesses the authority to bind his client requires an application of the principles governing agency law." Id. Notably, the Restatement (Second) defines an attorney's or agent's actual authority as an agent's power to affect the legal relationships of the principal "by acts done in accordance with the principal's manifestations of consent to him." Restatement (Second) Agency § 7 (1958).
In addition, it is clear from the affidavit of Attorney Rotella — the Committee's attorney — that he asked the head of the Committee about referring Ms. Otero's appeal to arbitration.See Rotella Aff. ¶¶ 12-13. The head of the Committee "did not object to [this] *Page 8 
proposal." Id. at ¶ 14. The Union's legal attorney indicates that "Rotella informed me that the Committee had agreed that [Ms. Otero's case] could be submitted to arbitration." See
Santiniello Aff. ¶ 12. See also Rotella Aff. ¶ 15 ("I orally informed Mr. Santaniello that I would agree to refer the appeal of Ms. Otero . . . to arbitration.") This Court finds that Mr. Rotella possessed actual authority to agree to arbitrate.
Rotella attests that "there was never a written agreement to refer this matter to arbitration, nor has the Committee ever voted to agree to refer the said appeals to arbitration."Id. at ¶ 23. However, it is well settled in Rhode Island that an agent's authority to bind the principal need not be in writing. See Preble v. Higgins,43 R.I. 10, 14, 109 A. 707, 709 (1920). Moreover, this Court has already noted that the CBA's provisions allow for the arbitration of for-cause termination grievances. Thus, by ratifying the CBA, the Committee had already agreed to submit such disputes to arbitration. No contract modification was necessary, and no formal board action was required. Not only did Attorney Rotella have actual authority to agree to arbitration, but the CBA itself also contained the necessary arbitration provisions. The Committee agreed to arbitrate.
 IV Conclusion
The Court concludes that Ms. Otero's grievance is arbitrable. Having already agreed to the arbitrability of for cause terminations in the CBA, and this arbitration in particular, no further action was required to submit Ms. Otero's grievance to arbitration. Arbitration is the appropriate vehicle in this dispute. Plaintiff's requests for injunctive relief and declaratory judgment are denied.
[1] On March 3, 2010, the Committee member whose absence was preventing a full Committee hearing was replaced. Thus, the Committee was no longer prevented from conducting a hearing on Ms. Otero's grievance.
[2] The Committee has provided this Court with a copy of the 2003-2006 CBA between the Union and itself. In a footnote, it explains that a new contract — which was never actually signed — has been entered into for the 2006-2009 period. The Committee avers that the applicable terms of the 2003-2006 CBA have not been changed. For these reasons, the Committee included only the older copy. When citing a provision of the CBA, this Court will rely on the 2003-2006 agreement.
[3] According to § 16-13-4(b), "Nothing contained in this section shall be construed to prohibit or at any time to have prohibited a school committee from agreeing, in a collective bargaining agreement, to the arbitration of disputes arising out of the nonrenewal, dismissal, and/or suspension of a teacher pursuant to §§ 16-13-2, 16-13-3, and/or 16-13-5."