SCHOOL COMMITTEE OF THE
TOWN OF NORTH
KINGSTOWN

v.

John CROUCH et al.

No. 2001–213–Appeal.

Supreme Court of Rhode Island.

Nov. 8, 2002.

Peter Olsen, Wickford, for Plaintiff.

Stephen Robinson, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case considers whether various arbitration and grievance provisions in a collective bargaining agreement (CBA) apply to a school committee's dismissal for cause of a tenured teacher. It also addresses the election-of-remedies doctrine. The defendants, John Crouch (Crouch), a former public school principal and tenured teacher, and his union, National Education Association of Rhode Island (union), appeal from a preliminary injunction[1] that barred them from arbitrating Crouch's termination from employment as a tenured teacher in the Town of North Kingstown

---

1. In pertinent part, G.L.1956 § 9–24–7 provides:

"Whenever, upon a hearing in the superior court, an injunction shall be granted * * * by an interlocutory order or judgment, * * * an appeal may be taken from such order or judgment to the supreme court in like manner as from a final judgment, and the appeal shall take precedence in the supreme court."

(town). They contend that a Superior Court hearing justice erred in finding that the arbitration provisions in a CBA between the town and the union did not cover grievances arising out of for-cause dismissals of tenured teachers, such as Crouch. Because the CBA did not clearly provide for the arbitration of for-cause terminations involving tenured teachers and because Crouch elected to pursue his statutory remedy, we conclude that the hearing justice did not abuse his discretion when he preliminarily enjoined Crouch and his union from pursuing arbitration.

### Facts and Travel

Before losing his job, Crouch served as a tenured teacher and then, most recently, as a school principal in the town. But in 2000 he confessed to stealing the prescription drug Ritalin from students at the school where he worked. After the state initiated criminal proceedings against him, Crouch entered a plea of nolo contendere on June 15, 2000, to one charge of Ritalin possession and one misdemeanor charge of property embezzlement. He received a deferred sentence on one count and the court filed the other charge. In addition, the court ordered him to do community service and to receive counseling.

After Crouch's dismissal as a school principal, the town superintendent of schools recommended that plaintiff, School Committee of the Town of North Kingstown (school committee) *also* terminate him from his position as a tenured teacher.[2] Pursuant to G.L.1956 § 16–13–4(a),

Crouch requested a hearing on this recommendation. In response, the school committee held a series of hearings from June through October 2000 to consider whether Crouch should be dismissed from his position as a tenured teacher. On October 25, 2000, the committee voted to dismiss Crouch as a teacher on the basis of his admitted theft of Ritalin from the students in his charge. Thereafter, on November 2, 2000, the union filed a grievance on Crouch's behalf. The grievance letter stated that "this action violates specifically, but not exclusively, Article XXIV of the [CBA]" (governing terminations "for other than job related performance"). On November 6, 2000, Crouch appealed the decision of the school committee to the commissioner of education pursuant to § 16–13–4(a).[3] In a cover letter, Crouch's attorney said that Crouch had filed a grievance under the CBA, and he asked the commissioner to hold the appeal in abeyance pending resolution of that grievance.

On January 29, 2001, the school committee filed a complaint for declaratory and injunctive relief in Superior Court. In count 1, it asserted that the CBA did not provide for arbitration of disputes arising from the non-renewal, dismissal, or suspension of tenured teachers for cause, and therefore, it urged, Crouch's termination was not arbitrable. The school committee requested an injunction barring the union and Crouch from proceeding to arbitrate his dismissal. In count 2, the committee also averred that the election-of-remedies doctrine barred Crouch from seeking both

---

**2.** Notwithstanding his appointment as a school principal, Crouch retained his status as a tenured teacher pursuant to G.L.1956 § 16–13–3(c), which provides:

"Any teacher appointed to a position of principal, assistant principal, or vice principal within the school system in which the teacher has attained tenure shall, upon termination or resignation of the administrative position, be

allowed to return to his or her former status as a tenured teacher within the system."

**3.** Section 16–13–4(a) provides in part that: "Any teacher aggrieved by the decision of the school board shall have [a] right of appeal to the department of elementary and secondary education and shall have the right of further appeal to the superior court."

arbitration of a grievance under the CBA and a statutory appeal pursuant to § 16–13–4(a). It asked the Superior Court to declare that he could not pursue both remedies, and to issue an injunction against his attempt to arbitrate his dismissal. "[F]inding nothing in the CBA which clearly indicates that arbitration in this matter is agreed to by the parties," the hearing justice preliminarily enjoined Crouch and the union from pursuing arbitration.

## Standard of Review

■ On appeal, we limit our review of a preliminary injunction to whether the hearing justice abused his or her discretion in granting such relief. *Iggys's Doughboys, Inc. v. Giroux,* 729 A.2d 701, 705 (R.I.1999) (per curiam). To do so, we consider (1) whether the moving party established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested injunctive relief; (3) whether the balance of the equities, including the public interest, weighed in favor of the moving party; and (4) whether the issuance of a preliminary injunction served to preserve the status quo *ante. Id.* (citing *The Fund For Community Progress v. United Way of Southeastern New England,* 695 A.2d 517, 521 (R.I.1997)). *See* also *Higham v. Affleck,* 504 A.2d 1013, 1015 (R.I.1986) (review limited to whether trial justice granted appropriate temporary relief after applying correct legal standards).

## Analysis

The hearing justice in this case did not make extensive findings; nor did he elaborate on the factors he considered in granting a preliminary injunction. Nevertheless, in light of his conclusion that the CBA did not clearly provide for arbitration of a tenured teacher's dismissal for cause, he evidently focused on the school committee's likelihood of success on the merits of its claims as the lynchpin for granting a preliminary injunction. Given the centrality of that issue to this case, we conclude he did not err in doing so.

Tenured teachers such as Crouch enjoy statutory procedural protections related to their employment. Thus, "[n]o tenured teacher * * * shall be dismissed except for good and just cause." Section 16–13–3(a). This same section requires that when an employer proposes to dismiss a tenured teacher, he or she shall be furnished with a complete statement of the cause for dismissal, and shall be entitled to a hearing and an appeal pursuant to § 16–13–4. Section 16–13–4(a) provides that a teacher dismissed for cause may request a hearing before the school board, and that "[a]ny teacher aggrieved by the decision of the school board shall have [a] right of appeal to the department of elementary and secondary education and shall have the right of further appeal to the superior court."

But these statutes also indicate that a tenured teacher's statutory remedy is not necessarily exclusive. Section 16–13–4(b) states that:

"Nothing contained in this section shall be construed to prohibit or at any time to have prohibited a school committee from agreeing, in a collective bargaining agreement, to the arbitration of disputes arising out of the nonrenewal, dismissal, and/or suspension of a teacher pursuant to §§ 16–13–2, 16–13–3, and/or 16–13–5."

Section 16–13–3(b) has a similar, although slightly narrower, provision, indicating that school committees may contractually agree to the arbitration of disputes "arising out of the dismissal of a tenured teacher." The critical questions in this case are whether the school committee entered into

such an agreement, and whether, in any event, Crouch elected to pursue his statutory remedy when he asked the school committee and then the department of education to hear and determine his recommended dismissal.

 We begin our analysis by revisiting some basic principles. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960)). When uncertainty exists about whether a dispute is arbitrable, this Court, like the United States Supreme Court, "has enunciated a policy in favor of resolving any doubt in favor of arbitration." *Brown v. Amaral*, 460 A.2d 7, 10 (R.I. 1983) (citing *School Committee of Pawtucket v. Pawtucket Teachers Alliance*, 120 R.I. 810, 815, 390 A.2d 386, 389 (1978)). Nevertheless, "[n]o one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so." *Stanley–Bostitch, Inc. v. Regenerative Environmental Equipment Co.*, 697 A.2d 323, 326 (R.I. 1997) (quoting *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 784 (R.I. 1982)). Thus, "an arbitrator is 'powerless to arbitrate that which is not arbitrable in the first place.'" *State Department of Children, Youth and Families v. Rhode Island Council 94, AFSCME, AFL–CIO*, 713 A.2d 1250, 1253–54 (R.I.1998) (quoting *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections*, 707 A.2d 1229, 1234 (R.I.1998)).

 Whether a particular collective bargaining agreement contains clear language creating a duty to arbitrate a par-

ticular dispute is a matter for judicial determination. *Local Union 1393 International Brotherhood of Electrical Workers, AFL–CIO v. Utilities District of Western Indiana Rural Electric Membership Cooperative*, 167 F.3d 1181, 1183 (7th Cir.1999) (citing *AT & T Technologies, Inc.*, 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656). Because arbitrability is a question of law, we review such determinations *de novo*. See *State v. Rhode Island Alliance of Social Services Employees, Local 580 SEIU*, 747 A.2d 465, 468 (R.I.2000) (citing *Rhode Island Council 94, AFSCME, AFL–CIO v. State*, 714 A.2d 584, 588 n. 2 (R.I.1998)).

In contrast to the statutory remedy for a tenured teacher's dismissal for cause, which "is as much a part of the contract as if the statute had been actually written into the contract," *Sterling Engineering & Construction Co. v. Town of Burrillville Housing Authority*, 108 R.I. 723, 726, 279 A.2d 445, 447 (1971), the language of this CBA did not clearly state that the parties agreed to arbitrate terminations or dismissals of tenured teachers for cause. In fact, there was no express reference anywhere in the CBA to the termination of teachers for cause. Article VI, section C., of the CBA, entitled "Teacher Evaluations," stated that "[n]o teacher will be disciplined, reprimanded, reduced in rank or compensation without just cause." There was also a section, Article XXIV, section A.1—entitled "Job Termination and Recall Rights"—but it referred only to terminations "for other than job related performance." Also, as previously noted, the grievance-procedure clause defines grievances in relevant part as "a complaint by a teacher that: 1. he/she alleges that he/she has been treated unfairly or inequitably; 2. he/she alleges that there has been a violation, misinterpretation or misapplication of the provisions of this Agree-

ment or of established policy and practice * * *." CBA, Article XVIII, section A. And in Article XX, section D. of the CBA, the union agreed not to engage in any strike or work stoppage, and the school committee and the union agreed that "during the dates this Contract is in effect, any and all disputes arising between them shall be settled in accordance with the grievance procedures of this Agreement."

None of these provisions, however, clearly and unambiguously provided for the arbitration of disputes relating to the dismissal of a tenured teacher for cause. Although the hearing justice decided to grant a preliminary injunction because he construed the CBA as not clearly providing for the arbitration of this type of dispute, the following additional factors support this conclusion:

**■■■** 1. When, as here, a statute provides an express administrative remedy for aggrieved employees to invoke when challenging a for-cause termination or another type of adverse employment action, but also allows the parties to grieve or to arbitrate such disputes if they have agreed to do so in a CBA, the alleged arbitration agreement should be explicit about what types of disputes are covered by the arbitration provisions in the CBA. As a general rule of construction, "contractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law." 11 Samuel Williston, *A Treatise on the Law of Contracts*, § 30.19 at 206–11 (Richard A. Lord 4th ed. 1999) (Williston). In this case, the existing law is that "an '*appeal from the decision of a local school board by* a tenured teacher dismissed for alleged cause * * * *is governed by § 16–13–4.*'" *Warwick School Committee v. Warwick Teachers' Union*,

705 A.2d 984, 986 (R.I.1998) (per curiam) (quoting *Jacob v. Burke*, 110 R.I. 661, 669, 296 A.2d 456, 461 (1972)). Given the specificity of this statutory remedy and its incorporation as a matter of law into the CBA, the CBA's arbitration provisions should clearly cover the particular type of dispute specified in the statute as optionally arbitrable, instead of just referring to the arbitrability of other or more generalized disputes between the parties that do not explicitly cover for-cause terminations. "Although there is a presumption favoring arbitration, some provision within the agreement—either a specific provision detailing the matter or a past practices provision incorporating implied conduct into the contract—should exist to permit submission of the matter to arbitration." *Rhode Island Court Reporters Alliance v. State*, 591 A.2d 376, 378 (R.I.1991). Such a "clear statement" rule in this context will greatly aid the parties and any reviewing court in construing what remedial scheme applies to any given dispute of this nature. Here, because the more explicit remedial provisions of the statute are incorporated as a matter of law into the CBA, they govern the more general provisions of the CBA that did not explicitly subject for-cause terminations to the arbitration clauses. *See, e.g., Antonio Marcaccio, Inc. v. Santurri*, 51 R.I. 440, 442, 155 A. 571, 572 (1931) (applying the rule that specific terms in a contract limit the general terms); *accord* Williston, § 32:15 at 509–10 ("the more specific clause controls the more general").

2. Although the union also negotiated a separate contract with the school committee for school-support personnel, that contract, in contrast to the CBA, contained an explicit provision allowing the covered employees to grieve recommended dismissals for just cause. The existence of this other contract negotiated by the same parties

suggests that, when the parties to this CBA desired to submit just-cause dismissals to a nonstatutory grievance procedure, they knew how to do so. Here, however, they failed to include the language they used to accomplish this purpose when they negotiated the other contract.

3. Crouch not only requested the school committee to conduct a hearing to determine whether to follow the school superintendent's dismissal recommendation, but also he participated for several months in the school committee hearings that convened to hear and to decide whether he should be dismissed. Thereafter, invoking § 16–13–4(a) (allowing teachers aggrieved by school board decisions to appeal to the department of elementary and secondary education and then to the Superior Court), he appealed the school committee's decision upholding the recommended dismissal to the department of education. Consequently, he has elected by his conduct to pursue his statutory remedy, thereby waiving whatever right he may have possessed *ab initio* to pursue arbitration under the CBA. Just as "when one party to a CBA attempts to take advantage of the grievance procedure and loses, the election of remedies doctrine prohibits that party from pursuing the same dispute in the courts of this state," *Cipolla v. Rhode Island College Board of Governors for Higher Education,* 742 A.2d 277, 281 (R.I.1999) (quoting *City of Pawtucket v. Pawtucket Lodge No. 4, Fraternal Order of Police,* 545 A.2d 499, 502–03 (R.I.1988)), so too when one party to a CBA attempts to take advantage of a statutorily-prescribed administrative remedy and loses, the election-of-remedies doctrine prohibits that party from pursuing the same dispute through a grievance procedure. Although Crouch asked the department of education to hold his appeal in abeyance pending the results of his arbitration efforts, such a request was unavailing because, absent an express agreement to the contrary, the statutory appeal procedure does not contemplate an aggrieved employee simultaneously pursuing both arbitration and his or her statutory right of appeal, nor does it allow the employee to hold one remedy in abeyance while he or she pursues the other.

4. Past practice and course-of-dealing evidence, to the extent it existed, suggested that the parties did not intend for the CBA to provide for the arbitration of for-cause dismissals. The town's superintendent of schools submitted an affidavit to the court indicating that, before this dispute arose, the union never contended that the CBA's arbitration and grievance provisions applied to terminations of teachers for just cause. And he testified that at least one other union member, besides Crouch, when challenging his own for-cause dismissal, had pursued the statutory remedy via an appeal to the department of education.

Suffice it to say that the other factors for granting preliminary injunctive relief also weighed in favor of the school committee. Given the existence of a statutory remedy—which Crouch already had pursued through the school committee hearings and on appeal to the department of education—the school committee showed that it would suffer irreparable harm if the court also allowed Crouch to arbitrate this dispute. The parties did not bargain for nor agree that tenured teachers would have two bites at the wrongful-discharge apple. The duplicative expenditure of time and resources that would be required to arbitrate this dispute—let alone the possibility of conflicting results—certainly tipped the balance of the equities in favor of the school committee. Finally, the injunction also preserved the *status quo ante.*

## Conclusion

For these reasons, we are persuaded that the motion justice did not abuse his discretion in granting preliminary injunctive relief and in enjoining the defendants from proceeding to arbitrate this dispute. Accordingly, we deny the appeal, affirm the Superior Court's order, and remand this case to the Superior Court for further proceedings consistent with this opinion.