DECISION
Before the Court is Plaintiffs' motion for a temporary restraining order seeking to prevent the Department of Administration ("DOA") from implementing paragraph 2 of Executive Order 08-01 issued by Governor Donald L. Carcieri ("Governor Carcieri") on March 27, 2008 (said paragraph 2 hereinafter referred to as "Executive Order").
 I Facts and Travel
Governor Carcieri's Executive Order relates to the E-Verify program which is an internet-based system established by the U.S. Department of Homeland Security in partnership with the Social Security Administration. The Executive Order provides: *Page 2 
 "The Department of Administration shall require that all persons and businesses, including grantees, contractors and their subcontractors and vendors doing business with the State of Rhode Island also register and utilize the services of the E-Verify program to ensure compliance with federal and state law." Exec. Order No. 08-01
The E-Verify program provides a database whereby employers may verify employee eligibility status to work legally within the United States. On or about July 29, 2008, DOA began mailing notices to all businesses and individuals contracting with the State (hereinafter collectively referred to as "vendors") requiring said vendors within forty-five (45) days to certify to the State that they are registered for the E-Verify program and use it to confirm that those they hire are authorized to work in the United States.
 II Standard of Review
The Plaintiffs seek to have this Court issue a temporary restraining order to prevent DOA from implementing the Executive Order. In order for such an order to issue, the Court must determine "(1) [w]hether the moving party established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested injunctive relief; (3) whether the balancing of the equities, including the public interest, weigh in favor of the moving party; and (4) whether the issuance of [the temporary retraining order] serve[s] to protect the status quo ante." Sch. Comm. Committee ofN. Kingstown v. Crouch, 808 A.2d 1074, 1077 (R.I. 2002) (citingIggy's Doughboys Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999)).
At the outset it must be noted that Plaintiffs have sought an immediate hearing for the issuance of a temporary restraining order in a case only recently filed and to which an answer has yet to be interposed. Furthermore, Defendants have not had the opportunity *Page 3 
to file a memorandum of law in opposition to that filed by Plaintiffs. Accordingly, the Decision herein is made on the basis of the complaint, accompanying affidavits, Plaintiffs' memorandum, and the arguments advanced in Court by all parties through counsel. It is on the basis of this "limited travel" that the Court must decide the request for temporary relief.
 III Analysis
The Plaintiffs advance four claims in their complaint. First, they contend that Governor Carcieri has violated the Separation of Powers Doctrine of the Rhode Island Constitution. They also argue that the issuance of the Executive Order is otherwise beyond the authority of the Governor to issue. They next contend that the Executive Order violates the Contract Clause of the Rhode Island Constitution. See article I, section 12 of the Rhode Island Constitution. Finally, it is advanced that the Executive Order, as implemented by DOA, violates the Administrative Procedure Act embodied in. G.L. 1956 § 42-6-1 et.seq. ("APA").
Based on the "limited travel" of this case, this Court does not conclude that it is more likely than not that Governor Carcieri has violated the Separation of Powers Doctrine by encroaching on the powers of the General Assembly to enact laws regarding state contracts. Nor, at this juncture, does the Court conclude that it is more likely than not that the Governor otherwise acted outside the scope of his executive authority.
The Executive Order does not violate the Separation of Powers Doctrine as embodied in Article V of the R.I. Constitution. The Executive Order does not encroach upon the power of the General Assembly to enact laws regarding state contracts. The *Page 4 
State Procurement Act, so-called, is embodied in G.L. 1956 § 37-2-1et seq. The Executive Order does not conflict with the State Procurement Act. The Chief Purchasing Officer, the Director of Administration, is a member of the Governor's cabinet and as such is directly accountable to him. The Chief Purchasing Officer has exclusive and broad authority to regulate state contracts. That officer has expansive authority to adopt regulations to effectuate the purposes of state procurement.See section 37-2-9. Those purposes are broadly defined and under the applicable statutory language are to be liberally construed to effectuate such purposes. Among those purposes are to provide for increased public confidence in the procedure followed in public procurement and to provide safeguards for a system of integrity. Moreover, the Chief Purchasing Officer has broad authority to consider and decide matters of policy with regard to State procurement. Section 37-2-9. In light of this framework, this Court cannot at this time conclude that he was acting contrary to any procurement authority by effectuating the substance of the Executive Order and prescribing a certification process.
The Executive Order is not outside of the authority of the Governor to issue. The chief executive power of this state is vested in the Governor. Article 9, section 1, of the Rhode Island Constitution. The Governor has full authority through the Chief Purchasing Officer to design a procurement system that fulfills the purposes embodied therein as noted above. Nothing under the procurement statute or elsewhere in the general laws impedes the Chief Purchasing Officer, at the Governor's directive, from designing a procurement system that insures that vendors doing business with the State directly verify the employment of individuals who are legally entitled to work within Rhode Island. *Page 5 
Based on the limited travel of this case, the Court does not find that it is more likely than not that the Executive Order violates the contract clause of the Rhode Island Constitution. Article 1, section 12 or the Rhode Island Constitution. The Rhode Island Contract Clause has been interpreted in the same manner as the federal Contract Clause.Brennan v. Kirby, 529 A.2d. 633, 638 (R.I. 1987). When relying on federal interpretation, there must be a `substantial interference' with the contract in order for it to be a violation of the Contract Clause.General Motors Corp v. Romein, 503 U.S. 181, 186 (1992). The E-Verify mandate, while adding an additional administrative burden upon vendors doing business with the State, does not substantially alter the basic tenets of the contract — i.e. the work to be performed and the consideration to be paid. Moreover, any such impairment resulting from the certification is minimal when compared to the stated public purpose as recited in the preamble to the Executive Order.
Based on the limited travel of this case, the Court does find that it is more likely than not that the APA was illegally circumvented by the DOA when it imposed the E-Verify requirement contained in the Executive Order along with a certification protocol. The DOA is subject to the APA and must adhere to its notice and public input requirements before promulgating a rule. It cannot seriously be argued that E-Verify is not a rule as defined under the APA. See G.L. 1956 § 42-35-1(8). Simply stated, the Executive Order has general application and prescribes and implements a matter of public policy.[1] DOA cannot insulate itself from compliance with the APA by characterizing it as a vendor certification requirement within the purview of DOA Regulations 4.3.1.5 and 4.3.1.53. An underlying rule embodying the Executive Order is necessary. Accordingly, *Page 6 
in implementing the Executive Order, DOA should have promulgated an E-Verify rule utilizing the notice and public comment requirements set forth in the APA.
Having found that it is more likely than not that the DOA violated the rule making requirements of the APA, the DOA must undertake to promulgate the E-Verify rule pursuant to the process that exists under the APA. Recognizing that such a rule can be promulgated within a matter of weeks, this Court must evaluate what harm, if any, the Plaintiffs will suffer by leaving the verification process intact pending the adoption of a final rule. The harm would be minimal as it relates to vendors, including the Plaintiffs, who presently have contracts. In any event, once a final rule is promulgated, presumably in a matter of weeks, the current vendors will need to adhere to the E-Verify certification process. As for vendors who may enter into contracts between now and the final adoption of a rule, the harm also would be minimal since those vendors would be required to certify as well once the rule has become final.[2] The DOA, however, should not be permitted to terminate any currently existing contract on the basis of non-certification until a final rule is promulgated, at which time any such termination would be made on the basis of the newly adopted rule.
 IV Conclusion
This Decision, as noted throughout, is based on the "limited travel" of this case to date. Once the case is answered, a hearing held on a preliminary injunction and/or *Page 7 
permanent injunction, and the matter is fully briefed, this Court can then adjudicate the ultimate merits of the case. Counsel are directed to prepare an order:
 (1) Denying the Plaintiffs' request for a temporary restraining order;
 (2) Directing DOA to promulgate its E-Verify rule pursuant to the APA, and;
 (3) Ordering DOA not to undertake to terminate any existing contract from the date of this Decision to the date of a duly promulgated rule on the basis of any vendor's failure to certify.
[1] The Court does not and need not at this time determine whether the Office of the Governor, which is the Executive Department as defined in G.L. 1956 § 42-6-1, is subject to the APA. The task of implementing the Executive Order fell to the Chief Purchasing Officer.
[2] The Plaintiffs' concerns about the reliability of the E-Verify program are speculative at this point. Furthermore, those concerns seemingly are not material to any of the elements of the causes of action asserted in the complaint.