Justice ROBINSON,
dissenting.
I readily acknowledge that the issues presented in this case are subtle and challenging; but, after long reflection, I remain unpersuaded by the reasoning of my colleagues, and I therefore must respectfully dissent.
The majority correctly recognizes that Encompass’s objection to Ms. Wheeler’s petition qualifies as an “application” under G.L.1956 § 10-3-14(a). That objection triggered the trial justice’s review of the award. See City of East Providence v. United Steelworkers of America, Local 15509, 925 A.2d 246, 253-55 (R.I.2007). However, I believe that the majority’s discussion of the merits misses the mark.
The parties had agreed in the contract of insurance to resort to arbitration with respect to the amount of damages recoverable by the insured from the tortfeasor. Yet, the arbitration panel decided the amount of the insurer’s liability — an amount that exceeded the insured’s policy limits.
Section 10 — 3—14(a)(2) expressly provides that a court “must make an order modifying or correcting the award * * * [wjhere *485 the arbitrators have awarded upon a matter not submitted to them.” (Emphasis added.) I believe that the majority’s analysis fails to deal with a critical fact — viz., that there is no evidence in the record that the parties ever agreed to submit to arbitration either (1) the issue of Encompass’s liability to Ms. Wheeler or (2) the issue of whether or not the insurance policy limits could be disregarded. Therefore, I believe that the trial court correctly modified the award by focusing on the only piece of the award related to a properly arbitrable issue {viz., the panel’s determination of the amount of damages suffered by Ms. Wheeler as a result of the tortfeasor’s actions) and then looking to Ms. Wheeler’s policy limits {viz., $100,000) in order to determine Encompass’s appropriate contractual liability.
Analysis
In Rhode Island, “[arbitration is a creature of the contract between the parties * * State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 866 A.2d 1241, 1247 (R.I.2005). Because of the contractual nature of arbitration, this Court has expressly recognized that “a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.” School Committee of North Kingstown v. Crouch, 808 A.2d 1074, 1078 (R.I.2002) (internal quotation marks omitted).
The following principle is critical to my approach in this case: An arbitration panel “derives [its] jurisdiction from a mutual agreement of the parties to submit the matter to arbitration.” Blackstone Valley Gas & Electric Co. v. Rhode Island Power Transmission Co., 64 R.I. 204, 223, 12 A.2d 739, 749 (1940) (emphasis added). Accordingly, “an arbitrator is powerless to arbitrate that which is not arbitrable in the first place.” Crouch, 808 A.2d at 1078 (internal quotation marks omitted); see generally Bush v. Nationwide Mutual Insurance Co., 448 A.2d 782 (R.I.1982).
The proper scope of the arbitration at issue in this case therefore must be determined by a contractual agreement between Encompass and Ms. Wheeler. See Bush, 448 A.2d at 784 (“[A] party is bound only to arbitrate those issues that he [or she] has consented to arbitrate.”). The only evidence in this case regarding any agreement to arbitrate is the highly specific arbitration provision contained in the insurance policy. Indeed, Ms. Wheeler’s appellate brief concedes this much, noting that the parties went to arbitration “[pursuant to the provisions of the insurance policy.”
The arbitration clause in section b.l of that insurance policy reads as follows:
“1. If [Encompass] and [Ms. Wheeler] do not agree:
“a. Whether [Ms. Wheeler] is legally entitled to recover damages; or
“b. As to the amount of damages which are recoverable by [Ms. Wheeler ];
“from the owner or operator of an uninsured/underinsured motor vehicle [ie., the tortfeasor ] then, if both parties agree, the matter may be arbitrated.” (Emphasis added.)
As Ms. Wheeler states in her appellate brief, Encompass did not “question [the tortfeasor’s] liability in this matter”; accordingly, subsection (a) of the above-quoted policy language did not apply. The only remaining arbitrable subject matter was the discrete issue that is referenced in subsection (b): “the amount of [Ms. Wheeler’s] damages which [were] recoverable * * * from the [tortfeasor].”
The arbitration panel’s award, however, decided issues that the parties never *486 agreed to arbitrate. The panel’s award reads in its entirety as follows:
“FINDINGS OF FACT: Total damages sustained by Joyce Wheeler is $150,000.00. Tortfeasor paid $25,000.00 on May 28, 2009 and Encompass Insurance paid $5,000.00 under the Medical Payment provision of the policy.
“Joyce Wheeler is entitled to 19% interest on the $25,000.00 tortfeasor payment, which equals $4,750.00. Joyce Wheeler is entitled to 40% interest on $120,000.00, which equals $48,000.00.
“Total amount due the Plaintiff, Joyce Wheeler, from Encompass Insurance Company equals ONE HUNDRED AND SEVENTY TWO THOUSAND SEVEN HUNDRED AND FIFTY ($172,750.00) DOLLARS.”
The first paragraph of the award decides the only arbitrable issue: the amount of damages suffered by Ms. Wheeler. The final paragraph of the award, however, goes on to decide Encompass’s contractual liability — even though there is absolutely no evidence that the parties ever agreed to arbitrate that issue. Rather, it is clear from the language of the insurance policy that the only issue that could be arbitrated was the amount of damages which Ms. Wheeler could recover from the tortfeasor. Further, by awarding $172,750 to Ms. Wheeler from her insurer, the award also decides that the $100,000 policy limits do not apply. Again, there is absolutely no evidence that the parties ever agreed to arbitrate any issue regarding the policy limits.
To the extent that the arbitration panel’s award decided issues beyond the discrete issues referenced in the insurance policy’s arbitration clause, the arbitration panel issued an award “upon a matter not submitted to them.” See § 10 — 3—14(a)(2). The trial court therefore was required by statute to “modify and correct the award, so as to effect the intent thereof and promote justice between the parties.” See § 10-3-14(b). That is exactly what the trial court in this case did; focusing on the language of the insurance policy, it properly modified the award to reflect the insurance policy’s clear $100,000 policy limits — the amount of insurance coverage that Ms. Wheeler had paid for.
By requiring the Superior Court to confirm the award, the majority is in effect ignoring the parties’ express written agreement according to which just two issues were potentially appropriate for arbitration (only one of which is relevant to this case). The Court is approving a financial windfall for Ms. Wheeler; she paid policy premiums that would entitle her to up to $100,000 of coverage, yet the majority is allowing her to collect $172,750.[10] The majority reaches this conclusion even though we have held that “in no event” may a plaintiffs recovery under his or her own underinsured motorist policy exceed the limits of that policy’s coverage. See Archambault v. Federal Insurance Co., 690 A.2d 1348, 1350 (R.I.1997) (emphasis added).
I agree with the majority opinion that “there is no record of the arbitration proceeding that gave rise to [the arbitration] award, nor is there any evidence establishing the question that was submitted to the arbitration panel.” I also acknowledge, along with the majority, that “the parties agreed that they did not submit a specific question or frame the issue for the panel.” However, I disagree with that opinion’s reliance on the absence of a record as a *487 predicate for the conclusion that “the arbitration panel was free to frame the issue before it.” I believe that their conclusion is patently wrong because the majority fails to address a threshold issue: What in the record authorized the arbitration panel to decide Encompass’s liability or any issue regarding policy limits?[11]
As mentioned above, an arbitration panel “derives [its] jurisdiction from a mutual agreement of the parties to submit the matter to arbitration.” See Blackstone Valley Gas & Electric Co., 64 R.I. at 223, 12 A.2d at 749 (emphasis added). The record does not contain a shred of evidence that the arbitration panel had the authority to decide (1) Encompass’s liability or (2) the issue of whether or not the policy limits should apply. Absent evidence of some supplementary agreement, the arbitration panel[12] was “powerless” to decide those two issues. See Crouch, 808 A.2d at 1078 (“[A]n arbitrator is powerless to arbitrate that which is not arbitrable in the first place.” (internal quotation marks omitted)); cf. Town of Coventry v. Turco, 574 A.2d 143, 147 (R.I.1990) (stating that an arbitrator “[does] not have the power and authority to rewrite [a contract]”). An arbitration panel is not “free to frame the issue before it” when the evidence shows that the parties agreed to arbitrate only discrete issues, as is the case here.
In 2005, the Utah Supreme Court addressed a case with a strikingly similar fact pattern. See Allstate Insurance Co. v. Wong, 122 P.3d 589 (Utah 2005). An automobile insurer filed a motion to vacate or modify an arbitrator’s award of underin-sured motorist benefits where the award exceeded the policy limits. Id. at 592. Just as in the case before us, the parties had agreed to arbitrate the insured’s damages — not the insurer’s liability. See id. Additionally, just as in the case before us, the arbitrators were never informed of the policy limits. See id. The Utah Supreme Court unanimously recognized that the arbitration panel went beyond its authority when it issued an award that (1) deter *488 mined the insurer’s liability (as opposed to the insured’s damages) and (2) exceeded policy limits:
“By the terms of [the arbitration ] agreement, the parties agreed to submit the issue of [the insured’s] damages to arbitration. The parties did not submit to arbitration the issue of [the insurer’s] liability to [the insured]. * * * In fact, there is no language in the [arbitration agreements] that would operate to invalidate or otherwise modify the mutual obligations contained in the parties’ insurance contract. In the absence of such language, as well as the lack of any behavior that would evidence a contrary intent, we conclude that the insurance contract, as well as the policy limits contained in that contract, remain in full force.
“As a result, the arbitrator, by purporting to fix [the insurer’s ] liability, based his award on a matter not submitted to arbitration.” Id. at 595-96 (emphasis added).
The court then modified the award to reflect the insurance policy limits under a statutory provision virtually identical to § 10-3-14(a).[13]
Similarly, in a case where the “parties agreed that the arbitrators were given no instructions as to their authority,” an appellate court in the State of Washington held: “In the absence of any instructions from the parties to the arbitrators that would modify the authority granted by the policy, we conclude that the arbitrators could award no more than the limit of the UIM coverage.” Anderson v. Farmers Insurance Co. of Washington, 83 Wash.App. 725, 923 P.2d 713, 716 n. 1, 716 (1996).
I believe that our own precedent also lends exceptionally strong support to what I consider to be the correct conclusion. In Bush v. Nationwide Mutual Insurance Co., 448 A.2d 782, 784 (R.I.1982), the contract of insurance stated: “[i]n any uninsured motorist claim * * * [i]f agreement cannot be reached with regard to liability or amount of damages, the matter will be decided by arbitration.” (Internal quotation marks and emphasis omitted.) In his award in that case, the arbitrator found that the vehicle that plaintiffs (the insureds) were driving at the time of the collision was not covered under the uninsured motorist provisions of their policy. This Court reversed the arbitrator’s ruling and stated:
“The agreement to arbitrate does not cover all disputes between insured and insurer but rather refers only to two issues: the insured’s liability for the accident and the amount of damages flowing from such liability. There is no language in either the arbitration provisions or the policy as a whole which can be read as an agreement to submit to arbitration issues regarding policy coverage.” Id. at 784-85 (emphasis added).
Notably, this Court held that the arbitrator was not free to frame the issue before him because the parties were bound by the specific arbitration clause in the insurance policy. See id.
As was the case in Bush, there is no language in the insurance policy between Ms. Wheeler and Encompass “which can be read as an agreement to submit to arbitration issues regarding policy coverage.” See Bush, 448 A.2d at 785. The only arbitrable issue in this case was the *489 amount of damages incurred by Ms. Wheeler as a result of the tortfeasor’s actions.
In conclusion, I reiterate that Ms. Wheeler concedes that the parties went to arbitration “[p]ursuant to the provisions of the insurance policy.” The arbitration clause in that contract is unquestionably narrow. The majority states that they are “unwilling to vacate an arbitration award on the basis of an insurance policy that was not in evidence” before the arbitration panel. What they are willing to do, however, is confirm an arbitration award that addresses two issues (viz., Encompass’s contractual liability to Ms. Wheeler and the policy limits) even though there is absolutely no evidence in the record that the parties ever agreed to submit those issues to arbitration. The trial justice was required to modify the award “to effect the intent thereof and promote justice between the parties.” See § 10 — 3—14(b). The majority instead confers a measure of authority on the arbitration panel that the parties never did. See Blackstone Valley Gas & Electric Co., 64 R.I. at 223, 12 A.2d at 749 (noting that an arbitration panel “derives [its] jurisdiction from a mutual agreement of the parties to submit the matter to arbitration”).
Because I believe that the trial court quite properly modified the award to conform to the parties’ arbitration agreement, I feel compelled to respectfully dissent.

. Encompass promptly paid Ms. Wheeler the $100,000 policy limits after the arbitration award was issued.

. The majority opinion cites to Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1116 (R.I.2002), in support of the proposition that the arbitration panel was "free to frame the issue before it.” (Internal quotation marks omitted.) The opinion in that case states: "As long as the agreement to arbitrate is valid and the subject matter of the dispute is arbitrable, the arbitrator may frame the issues to be decided.” Id. (internal quotation marks omitted) (emphasis added). Again, the majority fails to address the threshold issue. There is no evidence in this case that "the subject matter of the dispute [ (viz., the issues regarding policy limits and Encompass's contractual liability) ] [was] arbitrable.” See id. (internal quotation marks omitted). In Purvis, the arbitration clause was broad, providing that ”[a]ny controversy or claim arising out of or related to [the] contract or breach thereof, shall be settled by binding arbitration.” Id. at 1115 (internal quotation marks and emphasis omitted). The panel therefore had the authority to frame the issues within that broad arbitration clause. Likewise, the majority’s analysis might be correct if Encompass and Ms. Wheeler had agreed to arbitrate any controversy or claim arising out of or related to the insurance policy. In stark contrast, however, the arbitration clause in the case before us is as precise as it is narrow; it clearly indicates that the only arbitrable subject matter was the amount of damages that Ms. Wheeler could recover from the tortfeasor. There is no evidence that the parties agreed to arbitrate other issues. It ineluctably follows that the arbitration panel had absolutely no authority to "frame the issues” outside of the particular issue mentioned in the arbitration clause.

. It is quite possible that the arbitration panel never received the insurance policy and thus did not know the scope of its own authority. That fact is irrelevant to my analysis. The point is that an arbitration panel’s award can only be confirmed if there is evidence of an agreement to arbitrate the issues decided in the award. And there is no such evidence in this case.

. The Utah court also recognized that it is "commonplace” for parties to withhold insurance policy limits from arbitrators in un-derinsured motorist arbitrations because “parties to arbitration realize that imposing predetermined boundaries as to the range of a permissible award may adversely affect an arbitrator's ability to make an objectively fair assessment of damages.” Allstate Insurance Co. v. Wong, 122 P.3d 589, 595 (Utah 2005).