**Supreme Court**

No. 2012-147-Appeal.
(PM 09-258)

Providence School Board　　　　　:

v.　　　　　　　　　　　　　:

Providence Teachers Union, Local 958,　:
　　AFT, AFL-CIO.

NOTICE:　This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Providence School Board      :

v.      :

Providence Teachers Union, Local 958,      :
           AFT, AFL-CIO.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on April 9, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The Providence Teachers Union, Local 958, AFT, AFL-CIO (union), appeals from a Superior Court order granting the motion of the Providence School Board (board), to vacate an arbitration award. The union contends that the trial justice erroneously concluded (1) that it did not have standing to pursue a grievance concerning the board's change in the calculation of group premium rates for retired teachers (retirees) in the school department's health insurance plan (plan) and (2) that the issue of the calculation of group premium rates was not arbitrable. After carefully considering the written and oral submissions of the parties, we are satisfied that cause has not been shown and that the appeal may be decided at this time. We affirm the order of the Superior Court.

**Facts and Travel**

The facts of this case are undisputed. The board provides health insurance to both active employees and retirees. Since 1989, in order to calculate the premium costs for the plan,

underwriters developed working rates; these working rates were calculated by combining all active employees and retirees into a single group. In September 2004, active teachers and retirees began contributing to health insurance costs under the plan; and, for almost two years thereafter, any increase in premium costs was applied equally to active employees and retirees.

The landscape changed in the summer of 2006, however, when the underwriters separated active employees and retirees into two groups for purposes of calculating the working rates. This change in formula impacted the degree to which premium costs increased for each group; the premiums for active employees increased by approximately 10 percent, while retirees saw an increase of approximately 55 percent. By letter dated June 29, 2006, School Department Controller Michael D'Antuono (Controller D'Antuono) explained to the retirees the rationale for the change in premium-cost calculations, a move that was postponed until August 20, 2006:

> "[V]arious groups (i.e. active * * * school * * * employees) were required to contribute much more to the system than they actually consumed in claims. Also, the City [of Providence] learned that the retiree group did not contribute nearly as much into the system as they exhausted in claims. Due to the fact that retirees use the system at a much higher rate than others [sic] groups there must, inevitably, be an increase in the healthcare contribution of retirees."

In response, the union filed a grievance on September 25, 2006, protesting the difference in the increase of premium costs for retirees compared with the more modest increase in premium costs for active employees.[1] The union contended that the board's action violated three provisions of the collective-bargaining agreement (CBA) between the board and the union:

---

[1] Although the record does not contain a copy of the union's grievance, the arbitrator stated the following with respect to the grievance: "On September 25, 2006, the [u]nion submitted a grievance protesting what it termed the increased cost for health care insurance for retirees beyond 'the "Group Rate" for active teachers.'" At no point in this case has the union challenged the arbitrator's characterization of its grievance.

Appendix C (relating to medical coverage); Article 19 (concerning past practice); and Article 17-6 (barring, inter alia, age discrimination). The dispute was submitted to arbitration.[2]

Before the arbitrator, the board, relying on our decision in Arena v. City of Providence, 919 A.2d 379 (R.I. 2007), argued that the union had no standing to represent the retirees because they were not parties to the CBA or members of the bargaining unit. Additionally, the board contended that, because no provision of the contract restricts how the board may calculate insurance rates, the issue of calculation of group premium rates was not arbitrable. The union countered that it did have standing to enforce provisions negotiated when the retirees were still active employees. The union further argued that the issue of calculation of insurance rates was arbitrable and, further, that the clear language of the contract provided that retirees would receive the same coverage that they had when they were active employees.

The arbitrator ruled in the union's favor. First, he determined that the union had standing to pursue the grievance. The arbitrator pointed to a previous arbitration award between the board and union in 1995, in which the union sought to pursue a grievance challenging the board's decision to curtail certain insurance benefits for retirees when they attained a certain age; the board challenged the union's standing to pursue a grievance regarding retiree benefits, and the earlier arbitrator concluded that the union had standing. The arbitrator in the current case also found our decision in Arena distinguishable because it involved a situation "where the employer sought to prospectively change benefits for people who had already retired[,]" whereas this case involved the union's standing to "arbitrate to enforce a provision negotiated on behalf of people who were then active employees, but who have since retired."

---

[2] The union did not pursue the age-discrimination component of its grievance during the arbitration proceedings.

On the merits, the arbitrator determined that the board violated the medical-coverage and past-practice provisions of the CBA by failing to include retirees and active employees in a single group when it calculated the healthcare premium rates. He found the provisions of the CBA relating to health insurance coverage for retirees to be ambiguous. Confronted with this ambiguity, the arbitrator turned to past practice to discern the parties' mutual intent. He concluded that the union had sustained its burden of proving the existence of a past practice with respect to the meaning and applicability of the phrase "the Providence School Department's group premium rate," which was left undefined in the CBA. Specifically, the arbitrator found as follows:

> "Since 1989, the [b]oard developed working rates for all of the various insurance plans and coverages using a unified group composed of all School Department employees. Never before June[] 2006 did the [b]oard assert that there could be separate group premium rates for active employees and for retirees and their spouses. Up until June[] 2006, there was never any suggestion that 'the Providence School Department's group premium rate' meant anything other than the rate developed for the group composed of all active and retired participants in the insurance plans."

The arbitrator determined that this past practice bound the board to calculate the group premium rate using a single group of active employees and retirees. The arbitrator ordered the board to "recalculate the premiums * * * using the unified group and make whole the retirees and spouses for any extra premium charges."

Pursuant to G.L. 1956 § 28-9-18(a), the board moved to vacate the arbitration award in the Superior Court, where it reiterated its positions that the union had no standing to pursue this grievance and that the issue of calculation of the group premium rate was not arbitrable. In opposition to the board's motion, the union similarly repeated the arguments it had made during arbitration.

The trial justice vacated the arbitration award. In so doing, he first concluded that our decision in Arena compelled the conclusion that the union did not have standing to pursue a grievance on behalf of retirees. The trial justice determined that the arbitrator had exceeded his powers by concluding to the contrary. The trial justice next identified an alternative basis for vacating the arbitration award: Because the CBA was silent on how the group premium rate was to be calculated, the trial justice declared that the issue of the calculation of that rate was not arbitrable. The union appealed.

## Standard of Review

"It is well settled that, in the typical case, the judiciary's role in the arbitration process is limited." Drago Custom Interiors, LLC v. Carlisle Building Systems, Inc., 57 A.3d 668, 670 (R.I. 2012); see also Metropolitan Property and Casualty Insurance Co. v. Barry, 892 A.2d 915, 918 (R.I. 2006). When, as here, an arbitration provision is contained "in a written contract between an employer and an association of employees, a labor union, trade union, or craft union, * * * the provisions of [chapter 9 of title 28]" govern judicial review. Section 28-9-1. Specifically, upon timely application for an order confirming an arbitration award, "the court must grant the order unless the award is vacated, modified, or corrected as prescribed in §§ 28-9-18 and 28-9-19, or unless the award is unenforceable under the provisions of § 28-9-13." Section 28-9-17.

Section 28-9-18(a) sets forth the limited circumstances in which an arbitration award must be vacated:

> "(a) In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:
>
> "(1) When the award was procured by fraud.

- 5 -

"(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.

"(3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13."[3]

However, "[t]he issue of whether a dispute is arbitrable is a question of law that this Court reviews de novo." State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 866 A.2d 1241, 1247 (R.I. 2005) (RIBCO); see also State (Department of Administration) v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 2409, 925 A.2d 939, 944 (R.I. 2007) (Local 2409).

**Analysis**

We first address whether the union had standing to pursue this grievance. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Sacco v. Cranston School Department, 53 A.3d 147, 150 (R.I. 2012) (quoting School Committee of North Kingstown v. Crouch, 808 A.2d 1074, 1078 (R.I. 2002)). "[N]o one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so." Id. (quoting Crouch, 808 A.2d at 1078); see also RIBCO, 866 A.2d at 1247. "An arbitrator exceeds his or her powers if the arbitrator decides an issue that is not arbitrable. * * * If the dispute is non-arbitrable, then the award must be vacated in accordance with § 28-9-18(a)(2)." Local 2409, 925 A.2d at 944; see also RIBCO, 866 A.2d at 1247.

---

[3] In addition to the statutory grounds for vacating an arbitration award, "an award may be vacated if 'the award was irrational or if the arbitrator manifestly disregarded the law.'" Cumberland Teachers Association v. Cumberland School Committee, 45 A.3d 1188, 1192 (R.I. 2012) (quoting North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008)).

In this case, "the [u]nion submitted a grievance protesting what it termed the increased cost for health care insurance for retirees beyond 'the "Group Rate" for active teachers.'" See footnote 1, supra. It is apparent from the language of the grievance that the union sought to press a claim on behalf of retirees. However, neither the CBA nor our case law permits the union to pursue a grievance on behalf of retirees.

Under the CBA between the parties, "[t]he [b]oard recognize[d] the [u]nion as the exclusive bargaining representative for all those persons in the bargaining unit which consists of all certified teaching personnel, long-term substitute teachers, long-term substitute teachers in-pool, home visitors, social workers and nurses but which excludes all administrators and per-diem substitute teachers." Retirees are not included within the bargaining unit. Similarly, the CBA provides that "[t]he jurisdiction of the [u]nion shall include those persons now or hereafter who perform the duties or functions of the categories of personnel in the bargaining unit." (Emphasis added.) Clearly, retirees are not "persons now or hereafter" who perform these duties, and, therefore, are not within the union's jurisdiction under the CBA. Finally, the CBA defines the term "teacher" in a way that excludes retirees: "The term 'teacher' as used in this [CBA] means a person employed by the [b]oard in the bargaining unit as described in Article 1." Retirees are, by definition, no longer "employed by the [b]oard." In short, then, no provision of the CBA purports to authorize the union to pursue a grievance on behalf of retirees.

Correspondingly, our case law affords the union no basis upon which to pursue this grievance. In Arena, 919 A.2d at 384, 387, a number of retired firefighters (the plaintiffs) filed suit in Superior Court, seeking, inter alia, a determination of the appropriate amount of cost-of-living-adjustment (COLA) benefits. After the trial justice determined that the Superior Court had jurisdiction to entertain the plaintiffs' claim, the International Association of Firefighters

(firefighters union) and the City of Providence (city) agreed to enter into interest arbitration pursuant to the Fire Fighters Arbitration Act (FFAA), G.L. 1956 chapter 9.1 of title 28, to resolve the COLA dispute. Arena, 919 A.2d at 387-88. Significantly, the plaintiffs had not consented to the union's representation before the arbitration panel. Id. at 387, 388 n.9. After the arbitration panel rendered a decision, the city argued to the trial justice that she should defer to that decision; the trial justice disagreed, declaring that the Superior Court had exclusive jurisdiction over the plaintiffs' claim "and explicitly reject[ing] the arbitration panel's authority to determine benefits for already-retired firefighters without their consent." Id. at 388. The city appealed, contending, inter alia, "that the Superior Court was without subject-matter jurisdiction to determine [the] plaintiffs' appropriate COLA benefits because the FFAA [was] the controlling statutory authority for determining unresolved collective-bargaining issues." Id.

This Court disagreed and held that the Superior Court had exclusive subject matter jurisdiction over the plaintiffs' claim. Arena, 919 A.2d at 388. We explained that, because the plaintiffs were "retired firefighters seeking a declaration of their existing rights[,] * * * the FFAA does not apply to [the] plaintiffs' claim." Id. at 389. We noted that "retirees, at least in situations such as the one now before us, cannot be treated as employees * * *." Id. We identified three concerns that supported our conclusion "that the term 'firefighter' in the FFAA does not and cannot include retirees": first, "[t]he ordinary meaning of 'firefighter' and the definition included in the FFAA [could not] reasonably be construed to include retirees[,]" id.; second, "[t]he dangers against which the FFAA protects are simply not present with regard to retirees[,]" id. at 390; and, "[f]inally, * * * retirees and current employees of the fire department [did] not share a 'community of interests' with respect to [the] plaintiffs' COLA benefits * * *." Id. This third concern was of paramount importance; we reasoned that "the [firefighters union]

- 8 -

and the city could conceivably come to an agreement that would adversely affect [the] plaintiffs [in order] to benefit current fire department employees." Id. We therefore concluded that the "plaintiff retirees cannot be subject to the FFAA's mandates." Id.[4]

We recently relied on our decision in Arena in City of Newport v. Local 1080, International Association of Firefighters, AFL-CIO, 54 A.3d 976, 980-81 (R.I. 2012) (Local 1080). In Local 1080, a collective-bargaining agreement between a firefighters union and the City of Newport (Newport) required Newport to provide health insurance coverage to active firefighters and to make this same coverage "available to retired members of the Newport Fire Department." Id. at 977. When Newport made changes to the health coverage for both active and retired firefighters, the firefighters union sought to arbitrate two grievances it had filed contesting the changes in coverage provided to retired firefighters. Id. at 977-78. Newport filed a complaint in Superior Court, seeking a declaration that the grievances were not arbitrable. Id. at 978. The trial justice agreed with Newport and declared that the grievances were not arbitrable because "[r]etired firefighters are not firefighters within the embrace of the [collective-bargaining agreement] * * *." Id. The union petitioned this Court for a writ of certiorari, which we granted. Id.

We affirmed the trial justice's determination that the grievances were not arbitrable. Local 1080, 54 A.3d at 981-82. After examining the FFAA and the collective-bargaining agreement and chronicling our Arena decision, we concluded that "the parties did not intend to arbitrate disputes regarding retiree healthcare," and we held "that such disputes must be resolved,

---

[4] We explained in Arena v. City of Providence, 919 A.2d 379, 390 n.11 (R.I. 2007), that retirees were not precluded "from engaging in permissive bargaining with or through their former union and employer." In City of Newport v. Local 1080, International Association of Firefighters, AFL-CIO, 54 A.3d 976, 981 n.5 (R.I. 2012), we noted that "[s]uch bargaining * * * would require the express assent of the retirees, the bargaining agent, and the municipal officials." The record in this case is devoid of any such permissive bargaining.

if at all, judicially rather than through arbitration." Id. at 982. We determined that several provisions of the collective-bargaining agreement compelled this conclusion, including the provision defining the terms "member," "employee," and "fire fighter" in such a way that plainly excluded retired firefighters. Id. at 981.

Returning to the case at bar, our decisions in Arena and Local 1080 provide further support for our conclusion that the union cannot pursue this grievance on behalf of the retirees. This CBA, like the collective-bargaining agreement in Local 1080, 54 A.3d at 981, plainly excludes retirees from the bargaining unit, the jurisdiction of the union, and the definition of "teacher." Additionally, the concern we expressed in Arena, 919 A.2d at 390, about a lack of a "community of interests" between current firefighters and retired firefighters also is present here; the union, which is recognized in the CBA to represent a bargaining unit consisting of active teachers, and the board "could conceivably come to an agreement that would adversely affect [the retirees in order] to benefit current [teachers]." Id. Indeed, the letter from Controller D'Antuono reveals that it was this very lack of a "community of interests" between active teachers and retirees that led to the change in premium-cost calculation in the first place. The letter explained that active school employees "were required to contribute much more to the system than they actually consumed in claims[,]" while retirees "did not contribute nearly as much into the system as they exhausted in claims." This disconnect, Controller D'Antuono explained, was the reason for the change in premium-cost calculation: "Due to the fact that retirees use the system at a much higher rate than others [sic] groups there must, inevitably, be an increase in the healthcare contribution of retirees."

We reject the union's attempts to distinguish this case from our decisions in Arena and Local 1080. First, the union argues that this grievance is arbitrable because the union is bringing

- 10 -

it on behalf of active teachers who soon will retire. Alternatively, the union contends that it is pursuing this grievance in its own stead to enforce its own contractually-bargained-for rights; because the grievance procedure of the CBA defines "grievance" as "a complaint or claim by a teacher or the [u]nion filed with or by the [u]nion that an event or condition exists which represents a violation, inequitable application, [or] misinterpretation of this Agreement[,]" (emphasis added), the union asserts that it is permitted to bring a grievance on its own behalf and is exercising that option here.

These arguments need not detain us. Because of the precise language of the grievance before the arbitrator—"protesting what [the union] termed the increased cost for health care insurance for retirees * * *"—we need not decide whether, in some other case, the union may pursue a grievance on behalf of active teachers who will eventually retire or in its own stead as a contracting party to the CBA. The issue addressed by this arbitrator belies any suggestion that the union brought this grievance in its own stead or on behalf of active teachers; it clearly brought this grievance on behalf of the retirees—an action that the CBA does not authorize and that our decisions in Arena and Local 1080 foreclose.[5]

Therefore, because the union had no standing to pursue this particular grievance, the grievance was not arbitrable. In concluding otherwise, the arbitrator exceeded his powers. See Local 2409, 925 A.2d at 944 ("An arbitrator exceeds his or her powers if the arbitrator decides an issue that is not arbitrable."). Confronted with the board's motion, the trial justice was

---

[5] The union also directs our attention to two decisions of this Court—Providence Teachers Union, Local 958, American Federation of Teachers, AFL-CIO v. McGovern, 113 R.I. 169, 319 A.2d 358 (1974), and Providence Teachers Union, Local 958, American Federation of Teachers, AFL-CIO v. School Committee of Providence, 108 R.I. 444, 276 A.2d 762 (1971)—in which the board and the union arbitrated issues concerning retiree benefits. These decisions are of scant relevance to our analysis, however, because neither addressed the threshold issue with which we are concerned: whether the union had standing to pursue a grievance on behalf of retirees.

- 11 -

obligated to vacate the award.  See id. ("If the dispute is non-arbitrable, then the award must be vacated in accordance with § 28-9-18(a)(2)."); see also RIBCO, 866 A.2d at 1247.[6]

**Conclusion**

For the reasons articulated above, we affirm the order.  The papers may be remanded to the Superior Court.

---

[6] In light of our conclusion that the trial justice properly vacated the award on the ground that the union lacked standing to arbitrate the dispute, we need not address the trial justice's alternative ground for vacating the award: that, even if the union had standing to pursue this grievance, the issue of the calculation of the group premium rate was not arbitrable.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Providence School Board v. Providence Teachers Union, Local 958, AFT, AFL-CIO.

**CASE NO:** No. 2012-147-Appeal.
(PM 09-258)

**COURT:** Supreme Court

**DATE OPINION FILED:** June 19, 2013

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiff: Jeffrey W. Kasle, Esq.

For Defendant: John J. DeSimone, Esq.